Please rise. Please no noise. The Commission is now in session. This is the Court. Please sit down. Clerk, please call the first case. 2090866 F&C Industries v. The Workers' Compensation Commission Good morning, Your Honors. Mr. Kozin, may I please support Daniel Egan on behalf of the employer appellant F&C Industries. There are three main issues in this case, as Your Honors are aware. The first being whether or not medical bills should have been awarded. The second being whether or not the temporary total disability that was awarded should have been awarded. And the last one being whether or not this man is a permanent total disability candidate in light of the fact that there was absolutely no evidence of record of a job search or testimony from a vocational counselor. Are those elements required absolutely under the law? I believe they are. I believe they are under Weston. And I believe they're also required based upon the Olano case, which I cited in my reply brief, where Mr. Justice Holderidge indicated that a claimant ordinarily satisfies his burden of proving he is not capable of obtaining gainful employment by showing, one, that work was not available, or, two, that based upon his age, experience, training, and education, he is unable to perform any but the most unproductive tasks for which no stable labor market exists. And in that case, as it was pointed out, it was undisputed, like in this case, that the claimant did not attempt a job search, like in this case. What about the second element that you just referred to, his age, skills, and training? It's obvious he can't perform work. Well, I think it's speculative that without someone telling us what work is available for him, and I think that the initial burden of proving that he is an odd-lot candidate is on him to prove that element of the case by showing, A, I've looked for work, or, B, here's my expert who has interviewed me and who has taken a look at the available labor market in his geographical area and concluded that there is no work for this man. For the commission to have awarded the employee permanent total disability benefits in this case is sheer speculation. There's nothing upon which it is based. Did he, in fact, return to work for a while in this case? Wasn't he doing some work back at the company for a few weeks? Yes. A little bit of background. There were two cases at arbitration. The first case is the only one that is before Your Honors, and he did return to work for a few weeks for the Respondent. And then he went off work. And there was no award of TTD after he went off work. The TTD that was awarded did not start until, I believe, November of 2005. He stopped working for us, I believe, in March of 2003. What do you make of the commission's finding, quote, there was not any but a testimony that after his injury he attempted to return to work, could not perform the job, and was sent home? Well, if that were true, then why didn't they award TTD? I think there's an inconsistency in that, Your Honor. He was sent home, but they didn't award TTD. So what do we make of that? I struggled as I reviewed the record and reviewed the commission decisions in this matter. In particular, I appended for Your Honors the original decision and opinion on review as well as the corrected decision and opinion on review. And I did that for one very important reason. In the original one, we had a dissent. And in the second one, in the corrected one, we don't have a dissent. Now, we were supposed to just be correcting a Scrivner's error under 19F. And we get a whole new decision. I was not handling the case at that time, so I don't understand what happened. But I do know that's improper. But we do have a commissioner telling us that there was no shifting of the burden, if you will, to the employer. And then that's gone in the final decision. Let me ask you sort of a blunt question. Isn't there some evidence in the record to suggest there was some level of a permanent disability? I did not hear you. Isn't there some evidence in the record to suggest that the claimant sustained some level of permanent disability? Whether or not it's permanent total, can the legitimate argument be made there was some level of permanent disability? I think you can make that argument. And, in fact, in our brief, I did suggest a permanency award. But, again, if you look at the evidence, there was a recommendation for a functional capacity evaluation. That was never performed. We don't know what this man's ultimate disability is. He had degenerative disc disease. He had some abnormality on diagnostic MRI testing. But we don't have, we never even got to a point, at least of record, that we know what this man's restrictions even would be. So, in essence, you're saying there's insufficient evidence in the record to support the commission's award? Absolutely. Absolutely there is. There's nothing in there to support a permanent total. It's sheer speculation. With respect to the other two issues, if you look at what was admitted into evidence, there are records, exhibits, excuse me, that were offered and rejected. But if you look at simply what was admitted into evidence, there is no chain of referral to support the medical bills. We have three doctors. We may have four doctors. We have Dreyer Clinic, which the arbitrator concluded was the company doctor. I'm not certain that that is absolutely true, but I can concede that one. We have Dr. Trevino, the internist to whom Petitioner went after his initial visits at Dreyer Clinic. We have Dr. Geisler, where if you look at the Petitioner's testimony, he was referred by a friend named Zaragoza to Geisler. The records that counsel references in his brief are not even properly of record. They were rejected at trial. Are you saying that Dreyer, the medical clinic, was his first provider? Is that your position? That is my position, but I also will concede to Your Honor that there's testimony that he – that was the occupational clinic. But he was instructed to go to his testimony record by the employer. I'll take your word for that, but like I said, I will concede that that could have been the company doctor and not his first choice. Right. But you still have three other doctors. And the one it hinges on is Geisler, because we know that Zindrich, it's undisputed, he either was referred by this gentleman named Zaragoza or he was referred by his attorney to Dr. Zindrich. It depends on who you want to believe, the Petitioner or the doctor. But Dr. Geisler, there's nothing in his record to indicate how it was he got there, and there's nothing of record to indicate a referral. Well, the only testimony – or the only evidence of record is the Petitioner's testimony that he was referred to Dr. Geisler by his friend Daniel Zaragoza. So we have three separate choices of doctor. The bills that were awarded, I believe, were the ones from Geisler and Zindrich, definitely Zindrich. They should be excluded. He's the third choice of doctor. Now, what about the TTD benefits? The testimony from Dr. Zindrich is that this man was released to work in August of 2005. He came back. He didn't see Dr. Zindrich until after that point. Diagnostic testing never changed. There's no change in his diagnostics after Dr. Zindrich gets done looking at him and running him through an MRI and a discogram. There's no therapy. I don't know what Dr. Zindrich did for him other than generate a big bill. I think that the award of TTD based on Dr. Zindrich, where he's already been released to work by other doctors, is inappropriate. We'd ask that that be reversed as well. To get back to the final point, permanent total disability. As I prepared for this, there was something that struck me in the response brief, in the conclusion, and I didn't catch it when I wrote my reply. But Your Honors were advised that the Weston case was decided a few years after the arbitration in this matter. Weston came out on March 25, 2007, I believe. The corrected decision in arbitration, March 25, 2007. The commission reviewed Weston in their original decision and in their corrected decision. The Weston case was there. And it's not new law. As I pointed out, the quote from Mr. Justice Holderidge and Alano, there's no evidence of record to support a permanent total disability finding. We suggested in our brief 10% loss of use of the man as a whole. As for the medical and the TTD, we're asking that it be reversed. There's nothing of record to substantiate that. Thank you. Thank you. Counsel, please. Mr. Justices, Mr. Regan, my name is Bob Coase and I represent Pedro Mendoza. This case was, is and will be a question of fact. There were a couple of what I term to be bogus arguments, which I'd like to cover quickly. One was not even touched on by counsel. It's in this brief something about the incorrect TTD rate that was corrected by the arbitrator with a corrected decision. And that corrected decision appears on page 25 of counsel's brief. Now, as far as the doctors go, Dreyer Clinic, Pedro was sent to Dreyer Clinic when he had this back injury on 12-103. They say that he was there before and, therefore, it's his doctor. He was there before three, four years earlier because he smashed his toe at work and the workplace sent him there. So that's their clinic. That can't be number one. Doctor, he went to, Pedro went to Dreyer Clinic twice. Then he went to see his own doctor, Trevino, whose records were not admitted. But apparently Trevino sent him to places where there are some records, which would be a physical therapy outfit, an acupuncture, although those records weren't admitted either. And I know that although the record's not admitted, I feel compelled to say that on page 12 of Trevino's record, it says in his own handwriting, referred to Fred Dreyer. How can you refer to that? What? Is that in the evidence? No, not in the record. Well, then don't be. But I don't think an argument like to extend this case with an argument like that. Why didn't you get it in the record? That's another story. The record was excluded because it wasn't certified. We had an agreement when we were going to trial that we were going to put all the records in. Trial counsel at the time, not Mr. Egan, saw that there was a substitute arbitrator. He wanted a continuance. My guy wanted to go to trial. I had no option. So, therefore, they took back all of their agreements, and anything that was uncertified never went in. I can see the Trevino, the argument that he was the initial medical provider because the company sent him to Dreyer. How did we get to Geisler? Well, Trevino sent him to Geisler. Zerdoz recommended Zendrick. This guy, Pedro, doesn't speak any English. He doesn't write English. He had no education in Mexico. All he did was heavy work. Although he's documented, he paid taxes, and he paid Social Security for 14 years. Geisler's records show that he was getting reports from the hospital which were not only addressed to Geisler but to Trevino. And Geisler's record, it's a situation where Geisler was recommended by Trevino. As far as permanent total is concerned, according to what I know about the law in this state, it can be proven three different ways, preponderance of the medical testimony, a diligent but unsuccessful job search, which is the Western thing, and also by showing that age, training, education, experience, and physical condition would not allow a person to obtain employment in any known or available field. I think that we have shown that by preponderance of the medical testimony that he is a permanent total. There is no evidence, as submitted by the respondent, that he isn't. There is no opinion that they put forward that says that he's not permanent total. What about the argument they don't need to? If he doesn't establish the elements under the ad lib, he doesn't meet his burden, therefore they don't need to be buttered. What about that argument they're making that- Well, let's see what he did say, what he did prove. The PT place, physical, physio, whatever it was, very minimal improvement in tolerance to palpation and functional mobility, severe diminution of bodily function due to pain. Geisler, in his record, he said his pain is nine out of ten. Pain is worsening, acute distress, unable to hop, unable to lean forward more than ten degrees, straight leg raising test produced pain at 20 degrees, and then he prescribed three epidurals, and after the first epidural, they cut Pedro off. So there was no more medical. Zendrick says that his diagnosis was he aggravated a previous degenerative condition, and it was accelerated by the trauma. Three times in his deposition he said that Pedro is a total permanent. He said, if you don't believe me, order an FCE. They didn't order an FCE. Pedro didn't have $1,800 to get an FCE. And in any event, the rules of the commission are that they are bound to start vocational rehabilitation. As far as Weston is concerned, I can go and get a labor report for $750 from a friendly labor consultant telling me that my guy doesn't fit into the labor market. There's no problem with that. But to say that you gentlemen and an arbitrator in the commission can't decide without a labor counselor that a guy is a permanent total is ridiculous. If you buy testimony, then they don't need judges and they don't need arbitrators and they don't need commissioners. Did he return to work for a couple weeks? Yeah. He went back to work. They had him sitting next to a machine. Right. And he was watching the machine. Then they figured out that maybe he's a financial liability and they told him to grab a commercial mop and do some mopping. He said he couldn't do it. They said if he can't do it, you're gone. So was he capable of sitting in front of this machine and working this machine? He just sat there, pushed buttons. Well, is that evidence that he's employable? Well, he did the mop and it aggravated his condition. He left and he couldn't work after 20 minutes. His back was in severe pain. What they did for him was pay him his 401K. They filled out his insurance disability forms for him because he can't write. He signed it. He got disability insurance for a few months until the disability insurer decided it was a worker's comp case so they cut him off, and then they showed him the door. No medical, no vocational rehab, no nothing. Is it your position that even if we found that the commission was in error when it suggested that he was an odd lot permanent because there was no rehabilitation counselor evidence, that he's still entitled to permanent total disability on a medical basis based on Zendrick's testimony? Zendrick and Geisler. Right. There is nothing to contradict that. Absolutely nothing. And as far as the third situation that would make him a permanent total, he's 60-some years old. He has no training whatsoever. He has no education. And his physical condition is such that he's on Social Security disability and he's eating Voltaren and Vicodin every day. You can't really imply, as the respondent does, that after a guy works for 14 years in heavy work, that he sometime a light bulb lights up in his head and he's going to go on disability. That doesn't happen to people like Pedro Mendoza. The, as I say, numbers one and three as far as proving permanent disability have been met four square. There is no medical testimony as offered by the respondent to contravene Geisler and Zendrick, and they can't prove that this fellow is a brain surgeon. So he's not going to find another job with his physical condition and no education. Thank you. Barrow, please. Very briefly, in response to the argument regarding corrected decision, the corrected decision in opinion and review that we received has the old, the initial arbitrator's decision attached. Again, I didn't handle this case until we were well into the circuit court. So that's why I put that in there. I think counsel agrees with me that what the correct average would be wages. That's why I did not address that before Your Honors. The man does have an education. If you look at Dr. Geisler's records, I'll grant you it's not much of an education. The records reflect that he was educated through the eighth grade in Mexico. I'm not going to try to tell Your Honors that that's the equivalent of even an eighth grade education here in the states, but it is an education. The man was able to perform a job here in the states. The man was able to perform a job for a period of time here in the states before he was let go. On cross-examination of Dr. Zindrick, Dr. Zindrick acknowledged that the acupuncturist released him back to work and there was no effort to return him to work at that time. It is sheer speculation, Your Honors, to conclude that this man is a permanent, total candidate. It was not proven up. It was not proven up by vocational testimony. It was not proven up by a job search. He freely acknowledged he didn't do any type of job search. What about the medical? The medical, I'm really torn about where I want to go. There is nothing of record, and I'm going to leave it at that, to indicate that Dr. Zindrick is a second choice of doctor. I could go a lot of places with Geisler, and the only thing I will say is that if Geisler was referred by Trevino, why did it take him six months to go there, and why were there referrals to other doctors in the interim, and why does Geisler's records not reflect the referral? But again, the only record of evidence before Your Honors are Geisler's records, which are silent on any referral. Well, what do you make of why was Trevino receiving copies of reports if he had no connection to Geisler? That would amount to speculation. I have seen in my practice doctors write reports to family doctors or other orthopedists without mention of a referral, and then you try the case, and the person says, I went there on my own, and I told them I had seen Dr. X, Y, and Z before. We don't know why. That's the bottom line. Whatever is before Your Honors, we don't know how he got to Dr. Geisler if you look at what is of record. Did Zindrick testify that in the absence of surgery, the claimant would be more likely than not totally disabled? I would have to, again, review his records, but I do know that he testified that there should be an FCE performed, and I do know that at places he testified that, I cannot tell you what his work capacities are absent the functional capacity evaluation. Thank you. Court will take the matter under advisory for disposition.